IN THE UNITED STATES DISTRICT COURT
FOR THE MASSACHUSETTS

| | |
|---|---|
| LUNAN PHARMACEUTICAL GROUP CO. LTD.,<br><br>          Plaintiff,<br>v.<br><br>LONG ZHAO,<br>          Defendant. | Case No: 21-10667-LTS<br><br>The Honorable Leo T. Sorokin<br><br>**JURY TRIAL DEMANDED** |

**FIRST AMENDED COMPLAINT**

Plaintiff Lunan Pharmaceutical Group Co. Ltd. (hereinafter "Lunan Pharmaceutical" or "Lunan"), by and through its undersigned attorneys, for its First Amended Complaint against Defendant Long Zhao alleges and states as follows.

I.   **PRELIMINARY STATEMENT**

**1.**   Lunan is an innovative international pharmaceutical company that has integrated cutting-edge research and traditional Chinese medicine for the benefit of patients. As the company's website reveals, Lunan's "products have been sold to the United States, Japan, India," and dozens of other countries, making it "one of the top five Chinese exporters of Chinese medicine." http://www.lunanpharma.com/honors/. Defendant Zhao—under a misguided belief that her deceased father's former role at Lunan entitles her by birthright to an enormous stake in the company—has taken a series of unlawful measures to attack Lunan and seize control. In her campaign, Defendant Zhao has published online statements disparaging company leadership, filed suit in the British Virgin Islands, and stolen Lunan's confidential financial information. To accomplish that theft, Defendant Zhao enlisted a Lunan insider to unlawfully obtain for her the private company's proprietary information. Defendant Zhao has hidden the identity of her

accomplice, and the full extent of her theft remains to be discovered.

2. Over a period of time that ran well into 2020, Defendant Zhao conspired with the unknown Lunan insider to gain unauthorized access to its back-end computer databases and abscond with confidential Lunan financial information. Defendant Zhao evidently knew the confidential information was strictly protected, which is why she induced an insider who was subject to confidentiality obligations to Lunan to furtively obtain the information for her.

3. Defendant Zhao may seek to mischaracterize this case as somehow nothing more than an outgrowth of the Virgin Islands litigation. It is not. That matter concerns ownership of Chinese companies and involves complex issues of Chinese corporate law and facts dating back to 2001. The case is not about Virgin Islands or Chinese corporate law. Rather, it is about Defendant Zhao's unauthorized access and misappropriation of confidential and trade secret information from a private company's internal databases, resulting in violations of U.S. and Massachusetts law by a Massachusetts resident.

4. While several instances of Defendant Zhao's malfeasance came to light in the ongoing Virgin Islands litigation, Lunan has ample reason to believe they are only the tip of the iceberg and that discovery in this case will reveal a web of misappropriation and computer fraud and abuse conducted in furtherance of the campaign Defendant Zhao has relentlessly waged against her father's former company. Lunan brings this case to stop Defendant Zhao's violations of federal and Massachusetts law and to recover for the harm she has already wrought.

## II. PARTIES

5. Plaintiff Lunan Pharmaceutical is a Chinese pharmaceutical company that maintains its principal place of business at No. 209, Hongqi Road, Linyi City, Shandong Province, China. Lunan carries out medical research and is involved in the production and sale of

pharmaceutical products through a network of subsidiary companies in and outside of China. Lunan's products have been sold to and are very popular in the U.S., Japan, India, Brazil, Canada, and many other countries.[1] Lunan's subsidiary Shandong New Time Pharmaceutical Co., Ltd. ("New Time") exports active pharmaceutical ingredients to a U.S.-based global pharmaceutical company and is actively negotiating additional business with potential U.S. partners. Lunan accordingly anticipates that in the coming months, Lunan will make further exports to U.S. partners.

6. Defendant Long Zhao resides in Massachusetts at 61 Maple St., Apt. D, Canton, Massachusetts 02021, USA.

### III. JURISDICTION AND VENUE

7. This court has jurisdiction over the subject matter of this First Amended Complaint pursuant to 28 U.S.C. §1331, as two of Lunan's claims arise under federal statutes, the Defend Trade Secrets Act of 2016 (18 U.S.C. § 1836 *et seq*.) and the Computer Fraud and Abuse Act (18 U.S.C. § 1030 *et seq*.). This Court also has supplemental jurisdiction over state and common law claims under 28 U.S.C. § 1367(a).

8. This Court has personal jurisdiction over Defendant Zhao because she resides in the Commonwealth of Massachusetts and committed tortious acts in Massachusetts.

9. Venue is proper in this Court under 28 U.S.C. §§ 1391(b) and 1391(c) because Defendant Zhao resides in this District and a substantial part of the events giving rise to Lunan's claims occurred in this District.

---

[1] *See* http://www.lunanpharma.com/international_trade/; http://www.lunanpharma.com/honors/.

## IV.    APPLICABLE FACTS

### A.    Defendant Zhao Brings Suit in the Virgin Islands over a Lunan Stock-Ownership Dispute

10.    Defendant Zhao's father, Zhiquan Zhao, was the Chairman of the Board and CEO of Lunan until his death in November 2014.

11.    In 2017, Defendant Zhao brought an action in the Eastern Caribbean Supreme Court in the High Court of Justice Virgin Islands, Commercial Division (hereinafter "BVI Litigation"), claiming that she is beneficially entitled to twenty-one million shares of the common stock of Lunan Pharmaceutical—a 25.7% interest in the company—as well as stock in other Lunan subsidiaries, and requesting that the trustee of those shares surrender them to her.  Because the trustee held those shares for the benefit of Lunan, to protect the company, Lunan joined the BVI Litigation.

12.    The BVI Litigation is a dispute over ownership of corporate stock in Chinese companies, involving complex questions of Chinese law, and is based on events dating to as early as 2001.  It involves no allegations or claims of trade secret misappropriation, theft of confidential information, or computer fraud and abuse.  Nor does the BVI Litigation concern any claims arising under federal or Massachusetts law.

13.    The assigned judge in the BVI Litigation conducted a trial in March 2021, and the parties are currently awaiting a decision.

### B.    Defendant Zhao Conspires with and Induces Lunan Insiders to Steal Lunan's Trade Secrets and Other Confidential Information on Her Behalf

14.    Prior to and after she initiated the BVI litigation, on multiple occasions, Defendant Zhao solicited, abetted, conspired with, and induced an unknown employee of Lunan to gain unauthorized access to Lunan's computer and database to unlawfully retrieve highly proprietary and confidential Lunan information on Defendant Zhao's behalf.

4

15. Lunan and its subsidiary companies, including New Time, utilize a common computer network and operations system. This system comprises a network of computers with access to back-end databases, and includes various common software sub-systems, including an accounting and auditing system; a production cost, purchase, sales, and storage system; and a quality inspection system. Lunan's domestic and international sales are completed through this common system, including the sales—and the preparation of all business documents supporting such sales—made by New Time.

16. Lunan protects its confidential information through physical, electronic, and contractual means. For example, only a handful of Lunan employees have access to Lunan's entire accounting database. Lunan imposes tight controls upon the ability of a user to export information from the database.

17. In or around April 2017, Defendant Zhao, without authorization, secretly gained access to Lunan's back-end database. She did so with the aid of an unknown Lunan employee with whom she conspired. Defendant Zhao directed this employee to retrieve Lunan's confidential and trade secret information without the company's knowledge or consent. This information included detailed accounting ledgers of two Lunan subsidiaries reflecting dividends distributed to foreign shareholders. Gaining access to such closely kept information would provide anyone dealing with Lunan, including competitors and potential partners and investors, with an unfair competitive advantage in negotiations, sales, and other business dealings. Upon information and belief, Defendant Zhao's unnamed co-conspirator acquired this information directly from Lunan's back-end databases via a Lunan computer with internet access. Lunan's management did not learn of Defendant Zhao's theft until in or around December 2019.

18. In or around November 2017, Defendant Zhao, again unlawfully accessed Lunan's

back-end database with the aid of the same unknown Lunan employee with whom she conspired to retrieve further Lunan's confidential and trade secret information. This information included confidential board resolutions of Lunan subsidiaries. Upon information and belief, Defendant Zhao's unnamed co-conspirator acquired this information directly from Lunan's back-end databases via a Lunan computer with internet access. Lunan's management did not learn of this further theft by Defendant Zhao's theft until in or around December 2019.

19. In or around February 2019, Defendant Zhao instructed the unknown Lunan employee to send her "anything regarding the foreign shares. And all the board resolutions." Defendant Zhao's unnamed co-conspirator complied with her instructions. On or about February 26, 2019, the co-conspirator provided the requested Lunan confidential and trade secret information to Defendant Zhao via WeChat, a popular Chinese messaging and social network. Upon information and belief, Defendant Zhao's unnamed co-conspirator also forwarded Defendant Zhao Lunan's confidential cashflow statement, which reflects all revenues, product costs, operating expenses, and income taxes of Lunan. Gaining access to such closely kept information would provide anyone dealing with Lunan, including competitors and potential partners and investors, with an unfair competitive advantage in negotiations, sales, and other business dealings as it would provide insight into the company's cash reserves, investments, and finances. Upon information and belief, Defendant Zhao's unnamed co-conspirator acquired this information directly from Lunan's back-end databases via a Lunan computer with internet access. Lunan's management did not learn of Defendant Zhao's theft until in or around March 2020.

20. Upon information and belief, in or around April 2020, Defendant Zhao once again secretly accessed to Lunan's back-end database with the aid of an unknown Lunan employee with whom she conspired with to retrieve Lunan's confidential and trade secret information. This

information included detailed dividend information relating to New Time that, as noted above, would provide an undue advantage to competitors, investors, or potential partners. Upon information and belief, Defendant Zhao's unnamed co-conspirator acquired this information directly from Lunan's back-end databases via a Lunan computer with internet access. Lunan's management did not learn of this further theft by Defendant Zhao until in or around December 2020.

21. The confidential and trade secret Lunan information taken by Defendant Zhao and her unnamed co-conspirator derives economic value from not being generally known, and not being readily ascertainable through proper means, by others who may obtain economic value from the disclosure or use of the information. Lunan is a privately held company and does not share its confidential information, including board resolutions and financial information, out of competitive and other concerns. On information and belief, the confidential and trade secret information that Defendant Zhao obtained unlawfully is not known or shared outside of Lunan and has not been disclosed publicly.

22. Lunan did not learn that Defendant Zhao unlawfully accessed Lunan's database until in or around December 2019, when Defendant Zhao disclosed certain information in the BVI Litigation about which Lunan management was previously unaware. Until that date, Lunan management did not know—and had no reason to suspect—that Defendant Zhao had unlawfully accessed Lunan's database and obtained its confidential and trade secret information.

23. Although Defendant Zhao produced certain unlawfully obtained information during the BVI Litigation, such information is not a part of the public record. Based on Defendant Zhao's pattern of misappropriation and gaining unlawful access to Lunan's computers over the course of an extended period of time, Lunan reasonably believes that the instances of theft

described above are not isolated; that she produced only a small amount of what she actually stole from Lunan over the course of years during the BVI Litigation; and that further investigation and discovery in this action will yield additional actionable instances of misconduct and misappropriation.

      **C.**      **Lunan Takes Reasonable Steps to Protect Its Confidential Information and Trade Secrets**

24.      Lunan has at all relevant times taken reasonable measures to protect its trade secrets and confidential information.

25.      Among other measures, Lunan requires its employees to sign confidentiality agreements. By signing the confidentiality agreements, employees acknowledge as follows:

> The confidential information involved in this agreement refers to non-patented technology and technical information that is not known to the public, that can bring economic benefits to the enterprise. It is practical and has been taken by the company to take confidential measures, such as technical secrets, trade secrets, etc. . . . trade secrets, including but not limited to: customer lists, sales plans, procurement materials, pricing policies, financial information, purchase channels, and other confidential information and materials.

26.      Lunan routinely requires employees with access to confidential or proprietary information to execute non-disclosure agreements.

27.      Lunan implements robust computer network security measures and allows only limited company-authorized persons to access confidential information stored in company computers. Additionally, Lunan prohibits employees from storing confidential information on any public portion of the company network, forwarding confidential information by email without proper labeling and authorization, or forwarding confidential information from work email accounts to personal email accounts.

28.      Defendant Zhao did not have permission or authorization from Lunan to access its computer systems, database, or confidential and trade secret information.

29. Upon information and belief, the unknown employee with whom Defendant Zhao conspired did not have permission or authorization from Lunan to access its back-end databases or its confidential and trade secret information. Nor did Defendant Zhao's co-conspirator have permission or authorization from Lunan to take screenshots of its confidential files in its database or to transfer those files to her or anyone outside the company.

D. **Lunan Launches an Investigation and Responds to Defendant Zhao's Illegal Conduct**

30. After Lunan learned of Defendant Zhao's misappropriation, it launched a company-wide investigation to identify Defendant Zhao's unnamed co-conspirator. Despite involving local authorities, Lunan still has not identified the perpetrator.

31. When Defendant Zhao was asked to identify her unnamed co-conspirator during the BVI litigation, she identified a false name – an "IT" person by the name of "John."

32. Upon investigation, Lunan confirmed there is no "IT" person with the name "John"[2] working at Lunan and has to date been unable to determine the perpetrator's identity. Defendant Zhao's willful refusal to identify her co-conspirator highlights her ongoing deceit and misdirection.

33. Lunan has incurred hundreds of thousands of dollars implementing necessary security enhancements to its database because of Defendant Zhao's acts of computer theft.

**COUNT I – Violation of the Defend Trade Secrets Act of 2016**
**18 U.S.C. § 1836 *et seq*.**

34. The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

---

[2] Plaintiff previously alleged the co-conspirator was identified by Defendant Zhao as "Yung." The transcript provided by Defendant Zhao states the co-conspirator's name is "John." Zhao Decl., Ex. D. Lunan is not aware of an "IT" person with the name "John" or "Yung" working at Lunan.

35. Lunan owns the above-described trade secrets misappropriated by Defendant Zhao. These trade secrets are related to Lunan products that are used in, and intended for use in, interstate or foreign commerce.

36. Defendant Zhao misappropriated Lunan's trade secrets at least by acquiring those trade secrets with knowledge or reason to know that the trade secrets were acquired by improper means; and by disclosing and using Lunan's trade secrets without the express or implied consent of Lunan in the course of the BVI Litigation (i) after using the improper means described above to obtain such trade secrets; and (ii) with knowledge or reason to know that such trade secrets were (A) derived from a person who had used improper means to acquire them—*i.e.*, her unnamed co-conspirator, (B) acquired under circumstances giving rise to a duty to maintain the secrecy of the trade secrets or limit the use of the trade secrets, or (C) derived from or through a person who owed a duty to the person seeking relief to maintain the secrecy of the trade secrets or limit the use of the trade secrets.

37. Upon information and belief, the unidentified Lunan employee with whom Defendant Zhao conspired was under a contractual obligation to Lunan not to use or disclose its confidential or proprietary information, including the trade secrets misappropriated by Defendant Zhao. Defendant Zhao's longstanding relationship with Lunan, her clandestine efforts to obtain Lunan's trade secrets, and her refusal to identify her unnamed co-conspirator demonstrate that Defendant Zhao was aware her co-conspirator was subject to—and was violating—such duties.

38. Upon information and belief, Defendant Zhao acquired, disclosed, and used Lunan's trade secrets in Massachusetts, including by directing her unidentified co-conspirator from Massachusetts and disclosing those trade secrets to her counsel in the BVI Litigation.

39. At the very least, Defendant Zhao aided and abetted her co-conspirator's

misappropriation of Lunan's trade secrets.

40. Lunan takes extensive measures to protect and maintain the secrecy of its trade secrets and confidential and proprietary information. These protections included requiring its employees and contractors to sign confidentiality and non-disclosure agreements, prohibiting removal of any materials containing confidential, proprietary information from its premises except in the pursuit of Lunan's business, limiting access to its offices, encrypting forms of electronic storage, and limiting access to its computer systems through a variety of security mechanisms, such as requiring a password.

41. Lunan has expended significant resources to compile its trade secrets and other confidential and proprietary information, which derive independent economic value from not being publicly available. They are highly valuable to Lunan and potentially to any person or entity that wants to gain a competitive advantage against Lunan in the pharmaceutical industry.

42. As a direct and proximate result of Defendant Zhao's misappropriation of Lunan's trade secrets and other confidential and proprietary information, Lunan has suffered and will continue to suffer irreparable harm and other damages, including but not limited to loss of value of its trade secrets. Lunan is therefore entitled to injunctive relief, monetary damages for its actual losses and for unjust enrichment, or a reasonable royalty for Defendant Zhao's misappropriation.

43. Defendant Zhao's misappropriation was willful and malicious, justifying an award of double damages and reasonable attorneys' fees to Lunan.

### COUNT II: Misappropriation of Trade Secrets, Massachusetts General Law ch. 93, § 42 Through § 42G

44. The allegations contained in the above paragraphs are hereby incorporated by reference.

45. Lunan took reasonable measures to protect and maintain the secrecy of its trade

secrets and confidential and proprietary information.

46. Lunan held its trade secrets and confidential information in strict confidence and confidentiality.

47. Defendant Zhao misappropriated Lunan's trade secrets at least by:

   **(a)** Acquiring those trade secrets with knowledge or reason to know that the trade secrets were acquired by improper means, including but not limited to breach of her co-conspirator's contractual obligations to Lunan;

   **(b)** Disclosing and using those trade secrets without Lunan's express or implied consent (i) after using improper means to acquire those trade secrets, including by inducing breach of her co-conspirator's contractual obligations to Lunan; and (ii) when she knew or had reason to know that her knowledge of those trade secrets was (A) derived from or through a person who had utilized improper means to acquire them, (B) acquired under circumstances giving rise to a duty to limit its acquisition, disclosure, or use, and/or (C) derived from or through a person who owed a duty to Lunan to limit their acquisition, disclosure, or use.

48. Upon information and belief, the unnamed Lunan employee with whom Defendant Zhao conspired was under a contractual obligation to Lunan to protect its confidential or proprietary information, including the trade secrets misappropriated by Defendant Zhao. Defendant Zhao's longstanding relationship with Lunan, her clandestine efforts to obtain Lunan's trade secrets, and her refusal to identify her co-conspirator confirm that she knew her co-conspirator was subject to—and was violating—such duties.

49. At the very least, Defendant Zhao aided and abetted her co-conspirator's misappropriation of Lunan's trade secrets.

50. Lunan has expended significant resources to compile its trade secrets and other

confidential and proprietary information, which derive independent economic value from not being publicly available. They are highly valuable to Lunan and potentially to any person or entity that wants to gain a competitive advantage against Lunan in the pharmaceutical industry.

51. Upon information and belief, Defendant Zhao acquired, disclosed, and used Lunan's trade secrets in Massachusetts, including by directing her unnamed co-conspirator from Massachusetts and disclosing those trade secrets to her counsel for the BVI Litigation.

52. If Defendant Zhao is not enjoined, she will in all likelihood continue to misappropriate and use Lunan's trade secrets for her own benefit and to Lunan's detriment.

53. As a direct and proximate result of Defendant Zhao's misappropriation of Lunan's trade secrets and other confidential and proprietary information, Lunan has suffered and will continue to suffer irreparable harm and other damages, including but not limited to loss of value of its trade secrets. Lunan is therefore entitled to injunctive relief, monetary damages for its actual losses, monetary damages for unjust enrichment where damages for its actual losses are not adequately addressed, and/or a reasonable royalty for Defendant Zhao's misappropriation.

54. Defendant Zhao's misappropriation was willful and malicious, justifying an award of double damages and reasonable attorneys' fees and costs to Lunan.

### COUNT III: Violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030

55. The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

56. Lunan maintains its proprietary and confidential documents, which contain closely guarded trade secrets, in a protected computer that is used by Lunan and its subsidiary companies, including New Time, in interstate or foreign commerce and which affects interstate or foreign commerce, and is connected to the internet. Normally the documents are encrypted in a format

which is not readable outside of Lunan's database.

57. Screenshots received by Defendant Zhao of the stolen proprietary financial documents show that they were retrieved through the backend of Lunan's database. Only a handful of Lunan employees have access to Lunan's entire database, and there are tight controls upon the ability of a user to export information from the database. Defendant Zhao has no authorized access to Lunan's database, and upon information and belief, her co-conspirator also has no authorized access to the relevant database or the materials at issue.

58. Due to the restrictions on exporting information from the database, the proprietary financial documents could not be transmitted directly from the unknown employee to Defendant Zhao via email or any other electronic communication channels. Instead, the unknown employee who aided Defendant Zhao took photos of the proprietary financial documents from a computer screen in China and transmitted them to her in the United States via messages on WeChat, thereby intentionally circumventing Lunan's computer security mechanisms.

59. Upon information and belief, Defendant Zhao directed and conspired with her unnamed co-conspirator from Massachusetts.

60. Defendant Zhao's actions were deliberate, willful, malicious, and unauthorized.

61. Defendant Zhao has violated the Computer Fraud and Abuse Act, including at least §1030(a)(2)(C), §1030(a)(4), §1030(a)(5)(B)-(C), and §1030(b).

62. Defendant Zhao's unlawful accessing and copying of Lunan's confidential and trade secret information from Lunan's protected computers impaired the integrity of that information, which Lunan took significant steps to maintain. Defendant Zhao's unlawful acts also caused disruption to Lunan's business due to the company's diversion of resources required to implement necessary security enhancements.

63. As a result of Defendant Zhao's violations, Lunan incurred costs exceeding $5,000. These costs include expenses to investigate Defendant Zhao's unauthorized access to Lunan's computer system and incurred hundreds of thousands of dollars in costs implementing security enhancements to its database because of her acts of computer theft.

### COUNT IV: Tortious Interference with Contract

64. The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

65. Upon information and belief, the unnamed Lunan employee with whom Defendant Zhao conspired was under a contractual obligation to Lunan not to use or disclose its confidential or proprietary information, including the trade secrets or other confidential information misappropriated by Defendant Zhao.

66. Defendant Zhao's longstanding relationship with Lunan, her clandestine efforts to obtain Lunan's trade secrets, and her refusal to identify her unnamed co-conspirator confirm that Defendant Zhao knew her co-conspirator was subject to—and was violating—such duties.

67. Defendant Zhao knowingly induced her unnamed co-conspirator to breach his contractual duties to Lunan.

68. Defendant Zhao's motive in inducing such breach of contract to secretly obtain Lunan's valuable confidential and trade secret information was improper in both motive and means.

69. Lunan was harmed by the Defendant Zhao's action, which ultimately resulted in the loss, use, and disclosure of Lunan's confidential information and trade secrets, and among other things, forced Lunan to expend resources to take substantial steps implementing necessary security enhancements to its database.

## COUNT V: Unjust Enrichment

70. The allegations contained in the above paragraphs are hereby incorporated by reference as if fully set forth herein.

71. To the extent any of the Lunan information misappropriated by Defendant Zhao does not satisfy the statutory definitions of "trade secret," it is at least confidential information that Defendant Zhao had no authorization to acquire, possess, use, or disclose.

72. Defendant Zhao's acquisition, possession, use, and disclose of Lunan's confidential information conferred a benefit on Defendant Zhao.

73. Defendant Zhao understood and has acknowledged that benefit. As described above, Defendant Zhao has used Lunan's confidential information at Lunan's expense, including by using the improperly obtained materials in her attempts to seize control of the company through both litigation and online attacks on company management.

74. It would be inequitable to permit Defendant Zhao to retain that benefit without compensating Lunan for its value according to proof.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests that this Honorable Court grant judgment in its favor, and award the Plaintiff the following relief against Defendant:

1. Injunctive Relief;
2. Damages suffered by Plaintiff as a result of Defendant's misconduct, including consequential damages;
3. Exemplary Damages;
4. Attorneys' fees and costs;
5. All applicable injunctive and equitable relief; and

6.  Any other relief the Court deems just and equitable.

Plaintiff demands a jury trial on all counts so triable.

Date: June 22, 2021

        PLAINTIFF
        Lunan Pharmaceutical Group Co. Ltd.

        By: /s/*Adam Gershenson*
        Michael N. Sheetz (BBO #548776)
        msheetz@cooley.com
        Adam Gershenson (BBO #671295)
        agershenson@cooley.com
        Dane Voris (BBO #704263)
        dvoris@cooley.com

        COOLEY LLP
        500 Boylston Street14th Floor
        Boston, MA  02116-3736
        Telephone: 617-937-2300
        Facsimile: 617-937-2400


        Bruce C. Fox (*pro hac vice*)
        Pa. ID No. 42576
        bruce.fox@obermayer.com
        Qiwei Chen (*pro hac vice*)
        qiwei.chen@obermayer.com
        Pa. ID No. 322789

        **Obermayer Rebmann**
        **Maxwell & Hippel LLP**
        525 William Penn Pl, Ste. 1710
        Pittsburgh, PA 15219
        Telephone: 412-566-1500
        Facsimile: 412-281-1530

## CERTIFICATE OF SERVICE

IT IS HEREBY CERTIFIED that on this 22nd day of June, 2021, the foregoing document was filed through the ECF system and will be sent electronically to the registered participants on the Notice of Electronic Filing and paper copies will be sent to any non-registered participants.

*/s/ Adam Gershenson*
Adam Gershenson