**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| LUNAN PHARMACEUTICAL GROUP CO. LTD.,<br><br>  Plaintiff / Counter-Defendant,<br><br>  v.<br><br>LONG ZHAO,<br><br>  Defendant / Counterclaimant. | ) <br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

Civil Action No. 21-10667-MJJ

## MEMORANDUM OF DECISION

April 26, 2026

JOUN, D.J.

Plaintiff/Counterclaim Defendant Lunan Pharmaceutical Group Co. Ltd. ("Lunan") and Defendant/Counterclaim Plaintiff Long Zhao ("Ms. Zhao") have been litigation opponents for nearly a decade. Having opposed each other in at least three different countries—the United States, the British Virgin Islands ("BVI"), and China—on issues that bear some connection, it is no surprise that the matter of comity is now before me.

For the reasons set forth below, Ms. Zhao's renewed motion for summary judgment on her counterclaim seeking recognition of two BVI judgments, [Doc. No. 256], is <u>GRANTED</u>.

## I.   BACKGROUND

The following facts, unless otherwise noted, are either undisputed or recounted in the light most favorable to Lunan, the non-moving party. *See Kinzer v. Whole Foods Mkt., Inc.*, 99 F.4th 105, 108 (1st Cir. 2024).

1

**A.    The BVI Litigation**

Lunan is a privately held Chinese pharmaceutical company. [Doc. No. 189-1 at 2]. From 2006 until early 2021, approximately 25% of Lunan's shares and approximately 25% of the shares belonging to certain Lunan subsidiaries were held in a BVI entity called Endushantum Investments Co. Ltd. ("Endushantum"). [*Id.* at 7]. Ms. Zhao's father, Zhiquan Zhao ("Mr. Zhao"), is Lunan's former Chairman and General Manager. [*Id.* at 18–19]. He passed in 2014, and, subsequent thereto, a disagreement arose concerning ownership of the Endushantum shares. *See* [Doc. No. 148 at 5; Doc. No. 189-1 at 8–9]. Lunan argued that Endushantum held the shares for the benefit of the company as its trustee. [Doc. No. 148 at 5; Doc. No. 189-1 at 9]. To the contrary, Ms. Zhao argued that Endushantum held the shares on behalf of Mr. Zhao and that those shares transferred to her by bequest of her father when he passed. [Doc. No. 189-1 at 8–9]. In August 2017, Ms. Zhao sued Lunan in the BVI seeking a declaration of ownership of the Endushantum shares. [Doc. No. 189-1 at 25; Doc. No. 148 at 5–6].

In July 2021, the BVI court issued a judgment finding that Ms. Zhao is the rightful owner of the Endushantum shares. [Doc. No. 189-1 at 56]. In September 2021, the BVI court ordered Lunan to pay $2,000,000 in interim costs to Ms. Zhao and her co-claimant (the "September 2021 Costs Order"). [*Id.*; Doc. No. 148-1 at 5] ("The Fifth Defendant shall pay to the Claimants the sum of US$2,000,000 by way of interim payment on account of the Claimants' Costs of the Proceedings on or before 8 October 2021."). The September 2021 Costs Order also requires Ms. Zhao to pay Lunan the costs of the Committal Application and the costs of the Consequential Directions Hearing. [Doc. No. 148-1 at 6]. That order also states that the costs for both the Committal Application and the Consequential Directions Hearing shall be assessed if the parties cannot come

2

to an agreement on their own and that such an assessment, if necessary, shall occur "at the same time as any set off against the Claimants' Costs of the Proceedings." [*Id.*].

Lunan requested multiple extensions of the deadline to pay Ms. Zhao in accord with the September 2021 Costs Order. [Doc. No. 151 at 3]. In February 2022, the BVI court issued a final order (the "February 2022 Costs Order") extending Lunan's payment deadline but requiring Lunan to pay interest. [Doc. No. 148-2 at 3–4] ("This Order is a final order."). Lunan admits that the February 2022 Costs Order "is final, binding, and enforceable in the BVI" and that "Lunan has not made any payment on [that] Order." [Doc. No. 189-1 at 90–91].

In June 2024, Ms. Zhao filed an application seeking an assessment of the balance of the costs of trial. [Doc. No. 148-3 at 4]. Lunan, *pro se* at that time, failed to appear at the assessment hearing. [*Id.*]. In September 2024, the BVI court issued another costs order requiring Lunan to pay Zhao an additional $2,872,819.15 plus interest (the "September 2024 Costs Order"). [*Id.*]. This award "represent[s] the sum Ms. Zhao requested minus the $4,000 Lunan objected to." [Doc. No. 189-1 at 93]. Lunan admits that it did not ask the BVI court to offset Ms. Zhao's costs award with any other costs awarded to Lunan, though it asserts that "Lunan had no obligation to ask, as the BVI court's September 2021 order on interim costs specifically instructs the court to do so." [*Id.* at 92–93]. Lunan also admits that it did not appeal the September 2024 Costs Order; the time to do so has passed; "the September 2024 Order is now final, due, and payable;" and "Lunan has not made any payment on the September 2024 Costs Order." [*Id.* at 94–95].

In total, the February 2022 Costs Order and the September 2024 Costs Order (collectively, the "BVI Judgments") require Lunan pay Ms. Zhao and her co-claimant $4,911,997.23 in costs, plus interest. [*Id.* at 95].

3

### B.    The Linyi Litigation

In December 2019, before the BVI trial, Lunan filed suit against Endushantum in Linyi, China. [Doc. No. 189-1 at 68; Doc. No. 164-14 at 9]. Ms. Zhao was not a party to that suit even though the suit concerned Endushantum shares. [Doc. No. 189-1 at 69; *see* Doc. No. 172-3 at 7]. The Linyi lower court appears to have issued a judgment that purported to award the Endushantum shares to Lunan. *See* [Doc. No. 189-1 at 68]. In December 2024, Ms. Zhao challenged the ruling, filing an application to annul the Linyi judgment. *See* [*id.* at 69–70]. The matter was remanded to the Linyi court for retrial. *See* [*id.*].

In January 2022, Lunan shareholders purportedly initiated a derivative lawsuit for unjust enrichment against Ms. Zhao and her family members in the Linyi court. *See* [*id.* at 83; Doc. No. 184-4 at 5]. On March 30, 2022, Lunan shareholders requested that the Linyi court freeze Ms. Zhao's bank deposits or other equivalent assets. [Doc. No. 184-4 at 6]. On June 1, 2022, the Linyi court issued the Freeze Order and Freeze Notice (collectively, the "Freeze Orders"), freezing approximately $2,125,486 in dividends and other payables owed by Lunan to Ms. Zhao through May 31, 2023. [*Id.*]. On June 6, 2022, Ms. Zhao's co-defendant filed a motion for reconsideration, and the Linyi court dismissed the motion. [*Id.*]. On May 31, 2023, the Linyi court renewed the Freeze Orders for an additional three years, until May 31, 2026. [*Id.* at 7]. According to a Lunan expert, the "freeze order includes the costs awarded under the Interim Costs Order. . . If Lunan violates the freeze order, it risks sanctions, legal action, even contempt or criminal liability in China." [Doc. No. 189-1 at 99].

### C.    The Beijing Litigation

Lunan alleges that "days after this Court denied summary judgment on her counterclaim, Zhao initiated a new action in Beijing, China seeking recognition and enforcement of the same

BVI costs awards at issue here."  [Doc. No. 257 at 5]. The Beijing court has allegedly "ordered Zhao's recognition claim [that was pending in the Beijing court] to be transferred to the Linyi Court—*i.e.*, the same court that issued the 'freeze' orders that conflict with the BVI Interim Costs Order." [*Id.*].

### D.    Procedural History

Lunan commenced the present action on April 21, 2021. [Doc. No. 1]. The complaint asserts claims for trade secret misappropriation, violations of the Computer Fraud and Abuse Act, tortious interference with contract, and unjust enrichment. *See generally* [Doc. No. 25]. At a high level, the complaint alleges that Ms. Zhao conspired with a Lunan insider to unlawfully access Lunan's confidential and trade secret information and then disclosed that information during the course of the BVI litigation. *See generally* [*id.*]. Ms. Zhao raises one counterclaim seeking recognition of the BVI Judgments pursuant to Massachusetts Foreign Money-Judgments Act, Mass. Gen. Laws ch. 235, § 23A. [Doc. No. 148 at 28–30].

The parties filed cross motions for summary judgment. [Doc. Nos. 154, 169]. On April 11, 2025, I granted summary judgment on Lunan's trade secret misappropriation claims and denied Ms. Zhao's counterclaim. [Doc. No. 196 at 2–4] ("Zhao's Cross-Motion for Summary Judgment on its counter-claim under Mass. Gen. Laws c. 235, § 23A, is **DENIED WITHOUT PREJUDICE**, with the Court to revisit this claim after trial.") (emphasis in original). In January 2026, following a 5-day damages trial related to Ms. Zhao's trade secret misappropriation, a jury returned a verdict awarding Lunan all or nearly all the damages it requested. *See* [Doc. No. 253]. Shortly thereafter, Ms. Zhao filed another motion for summary judgment on her counterclaim. [Doc. No. 256].

5

## II.    LEGAL STANDARD

Summary judgment is appropriate when, based upon the record, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine dispute is "one that must be decided at trial because the evidence, viewed in the light most flattering to the nonmovant, would permit a rational factfinder to resolve the issue in favor of either party." *Medina-Munoz v. R.J. Reynolds Tobacco Co.*, 896 F.2d 5, 8 (1st Cir. 1990) (citation omitted). The nonmovant "must point to facts memorialized by materials of evidentiary quality and reasonable inferences therefrom to forestall the entry of summary judgment." *Geshke v. Crocs, Inc.*, 740 F.3d 74, 77 (1st Cir. 2014). In reviewing a summary judgment motion, a court may examine "all of the record materials on file" "including depositions, documents, electronically stored information, affidavits or declarations…or other materials." Fed. R. Civ. P. 56(c); *Ahmed v. Johnson*, 752 F.3d 490, 495 (1st Cir. 2014).

## III.    DISCUSSION

The Massachusetts Foreign Money-Judgments Act, Mass. Gen. Laws ch. 235, § 23A (the "Act") permits the recognition and enforcement of "any foreign judgment that is final and conclusive and enforceable where rendered" unless a statutorily provided exception to recognition of the judgment exists. M.G.L. ch. 235, § 23A.

Ms. Zhao argues that the BVI Judgments satisfy the requirements for recognition under the Act. *See generally* [Doc. No. 170]. Lunan responds that the BVI Judgments are not entitled to recognition because they contradict themselves, conflict with the Linyi Freeze Orders, and were obtained by fraud. *See generally* [Doc. Nos. 182-1, 257]. Lunan also argues that Ms. Zhao's renewed motion for summary judgment should be evaluated under the motion for reconsideration standard and that Ms. Zhao fails to meet the heighted standard for reconsideration. *See generally*

[Doc. No. 257]. And, lastly, Lunan encourages the Court to exercise discretion and decline to rule on Ms. Zhao's motion based on judicial economy. *See generally* [*id*].

I address each argument in turn.

### A.       The BVI Judgments are Final, Conclusive, and Enforceable in the BVI

Ms. Zhao argues that both the February 2022 Costs Order and the September 2024 Costs Order are final, conclusive, and enforceable in the BVI. *See generally*, [Doc. Nos. 170, 256]. Lunan concedes that the February 2022 Costs Order satisfies the requirements for recognition under the Act. [Doc. No. 189-1 at 91] (admitting: "Lunan does not dispute that the February Payment Order is final, binding, and enforceable in the BVI"). However, it asserts that "[t]he BVI's 'September 2024 Costs Order' is not final and conclusive *because* it directly conflicts with the Interim Costs Order." [Doc. No. 182-1 at 17] (emphasis in original).

The September 2021 Costs Award states that Ms. Zhao must pay Lunan the costs of the Committal Application and the costs of the Consequential Directions Hearing and that those costs, if not agreed to, shall be assessed at the same time as and set off against Ms. Zhao's Costs of Proceedings. *See* [Doc. No. 189-1 at 82]. According to Lunan, in issuing the September 2024 Costs Award, "[t]he BVI court awarded Zhao's 'Costs of Proceedings' with no assessment of Lunan's or any other parties' countervailing costs and, thus, no 'offset' of those costs. . . Consequently, the September 2024 Costs Order directly conflicts with the Interim Costs Order and cannot be considered final and conclusive." [Doc. No. 182-1 at 18].

As a preliminary matter, it is not clear that the September 2024 Costs Order conflicts with the September 2021 Costs Order. When Ms. Zhao applied for her Costs of Proceedings in June 2024, she asked the BVI court to reconsider the provisions of the September 2021 Costs Order that required her costs to be set off against those awarded to Lunan. [Doc. No. 189-1 at 100] ("When

Zhao applied for her 'Costs of Proceedings' in June 2024, she specifically asked that these provisions be 'varied so that there be no set off against [her] costs.'") (alterations in original). Because the September 2024 Costs Order does not include any offset in Lunan's favor, it appears that the BVI court granted Ms. Zhao's request and modified the September 2021 Costs Order. *See generally* [Doc. No. 148-3].

Lunan implies that Ms. Zhao's request that the BVI court reconsider the set off provision in the September 2021 Costs Order was improper because it was untimely. *See* [Doc. No. 189-1 at 100] ("If Zhao wanted to avoid any assessment and set off of Lunan's awarded costs in the BVI matter, she needed to do that through timely appeal of the Interim Costs Order, not a 'variation' sought years after the fact."). But even if this were true, it does not explain why the September 2024 Costs Order is not final and conclusive. By Lunan's own logic, an order is binding once the time to appeal has passed, and Lunan did not file a timely appeal of the September 2024 Costs Order. [*Id.* at 94] (admitting: "Lunan's time to appeal the September 2024 Costs Order has expired and Lunan did not appeal that order"); *see also* [*id.*] (Lunan: "not disput[ing] the statement that the September 2024 Order is now final, due, and payable in the BVI"). Accordingly, the September 2024 Costs Order is final.

Similarly, the judgment is conclusive. The Act states that a foreign judgment "shall be conclusive between the parties to the extent that it grants or denies recovery of a sum of money" and shall not be conclusive if the foreign court does not afford due process or lacks personal or subject matter jurisdiction. M.G.L. ch. 235, § 23A. Because the September 2024 Costs Order grants Ms. Zhao $2,872,819.15 plus interest, [Doc. No. 148-3], and Lunan does not respond to Ms. Zhao's arguments supporting conclusivity, *compare* [Doc. No. 170 at 32–34] *with* [Doc. Nos. 182-1, 257], Lunan has not put forth any evidence justifying an alternate conclusion.

8

Both the February 2022 Costs Order and the September 2024 Costs Order are final, conclusive, and enforceable in the BVI.

### B.    No Exceptions to Recognizing the BVI Judgments Apply

The Act enumerates seven circumstances in which a foreign judgment shall not be recognized:

> (1) the defendant in the proceedings in the foreign court did not receive notice of the proceedings in sufficient time to enable him to defend; (2) the judgment was obtained by fraud; (3) the cause of action on which the judgment is based is repugnant to the public policy of this state; (4) the judgment conflicts with another final and conclusive judgment; (5) the proceedings in the foreign court were contrary to an agreement between the parties under which the dispute in question was to be settled otherwise than by proceedings in that court; (6) in the case of jurisdiction based only on personal service, the foreign court was a seriously inconvenient forum for the trial of the action; or (7) judgments of this state are not recognized in the courts of the foreign state.

M.G.L. ch. 235, § 23A.

Lunan argues that two exceptions to the Act justify nonrecognition of the BVI Judgments: the conflicting judgments exception and the fraud exception. *See generally* [Doc. Nos. 182-1, 257].

### 1.    Conflicting Judgments

The conflicting judgments exception to the Act prohibits recognition of a foreign judgment that "conflicts with another final and conclusive judgment." M.G.L. ch. 235, § 23A. Lunan asserts that the Freeze Orders are final and conclusive judgments that conflict with the February 2022 Costs Order and therefore prevent this Court from recognizing the latter. [Doc. No. 182-1 at 16–17] ("The BVI Interim Costs Order Conflicts with the Linyi Freeze Orders"); [*id.*] ("The BVI Interim Costs Order cannot be recognized because it conflicts with a 'final and conclusive judgment' in China prohibiting Lunan from paying those same costs."); [Doc. No. 257 at 3–4]

9

("The BVI Interim Costs Order (Doc. Nos. 148-1, 148-2) conflicts with an order issued by the Linyi [court] instructing Lunan to 'freeze any 'amounts' payable to Zhao up to ~$2.1 million.").

The parties dispute several elements of this exception, including whether (1) the Freeze Orders are "judgments" within the meaning of the Act and (2) the February 2022 Costs Order "conflicts" with the Freeze Orders. *See* [Doc. No. 170 at 33] (Ms. Zhao admitting: "The parties each designated experts in [Chinese] law who disagreed on whether the terms of the Freeze Order and Freeze Notice would prohibit Lunan from paying the BVI judgments."); [Doc. No. 257 at 3–4] (noting the difference between "orders" and "judgments"). But these disputes do not preclude summary judgment in Ms. Zhao's favor.

Even assuming arguendo that the Freeze Orders are "judgments" and that they conflict with the February 2022 Costs Order, no reasonable jury could find that the Freeze Orders are final. As Lunan's own expert on Chinese law explained, a freeze order is an interim measure used to ensure that a defendant can satisfy a "potential judgment" and expires if not renewed. *See* [Doc. No. 184-4 at 7–9] ("Asset preservation is an important category of interim relief under PRC law. . . Chinese courts will not conduct a full trial or detailed review at this stage. . . ."). That expert further explained that "since the Linyi Litigation remains unresolved, the plaintiffs can apply for another renewal before the Freeze Orders expire in 2026." [*Id*. at 7]. Given that Lunan's own Chinese law expert classifies freeze orders as "interim relief," the Freeze Orders are indefinite (*i.e.*, subject to either expiration or renewal next month), and the underlying Linyi litigation remains ongoing, the orders are not final judgments capable of triggering the conflicting judgments exception to the Act.

### 2.    Fraud

The Act states that "[a] foreign judgment shall not be recognized if . . . the judgment was obtained by fraud." M.G.L. ch. 235, § 23A. Lunan argues that Ms. Zhao "fraudulently induced the

BVI court to award her attorneys' fees to which she indisputably was not entitled to" and therefore the BVI Judgments are not entitled to recognition. [Doc. No. 257 at 4]; *see also* [Doc. No. 182-1 at 18–19] ("[T]he September 2024 Costs Award cannot be recognized because it 'was obtained by fraud.' . . . The BVI court did *not* award Zhao her costs for those proceedings; rather, it ordered her to pay Lunan's and other parties' costs.") (emphasis in original).

Most facts pertaining to the alleged fraud are not in dispute. The parties agree that the September 2021 Costs Order states that Ms. Zhao must pay Lunan the costs of the Committal Application and the costs of the Consequential Directions Hearing and that those costs, if not agreed to, shall be assessed at the same time as and set off against Ms. Zhao's Costs of Proceedings. *See* [Doc. No. 189-1 at 82]. Additionally, Ms. Zhao does not appear to dispute Lunan's allegation that the Schedule of Costs she submitted to the BVI court "included substantial costs [Ms. Zhao incurred that are] associated with Zhao's 'Committal Application' and 'Consequential Directions Hearing.'" *See* [*id.* at 100]. And, finally, the BVI court awarded Ms. Zhao the full amount of costs she requested and did not offset that award by the costs Lunan incurred for the Consequential Directions Hearing and the Committal Application. *See* [Doc. No. 148-1]; *see also* [Doc. No. 182-1 at 19].

Nevertheless, even when drawing all inferences in the light most favorable to Lunan, the argument still fails because the alleged fraud does not satisfy the requirements for the fraud exception under the Act. "In the context of the Massachusetts Foreign Money-Judgments Recognition Act, the fraud must relate to matters other than issues that could have been litigated and must be fraud on the court." *CDM Smith Inc. v. Atasi*, 594 F.Supp.3d 246, 258 (D. Mass. 2022) (cleaned up). "There is fraud on the court 'where it can be demonstrated, clearly and convincingly, that a party has essentially set in motion some unconscionable scheme calculated to

interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *Id.* (quoting *Aoude v. Mobil Oil Corp.*, 892 F.2d 1115, 1118 (1st Cir. 1989)). "A party must prove the most egregious conduct involving a corruption of the judicial process itself. Examples are bribery of judges, employment of counsel to influence the court, [etc.]." *Id.* (quoting *In re Paternity of Cheryl*, 434 Mass. 23, 36 (2001) (other citations and quotation marks omitted).

Lunan cannot show that either prong of the fraud exception is satisfied. Lunan has not identified any facts amounting to the egregious conduct of fraud on the court, and disputes over attorney's fees should have been litigated in the BVI court. *See id.* (quoting Restatement (Fourth) of Foreign Rel. L. § 484 cmt. d ("False testimony or forged evidence does not by itself provide a basis for nonrecognition because it should have been raised and dealt with in the foreign proceeding."). Accordingly, the alleged fraud does not provide a basis to not recognize the BVI Judgments.

### C.      <u>**Ms. Zhao's Motion Properly Seeks Summary Judgment**</u>

Ms. Zhao first filed a motion for summary judgment on her Massachusetts Foreign Money Judgment Act claim on February 15, 2025. [Doc. No. 169]. I denied that motion without prejudice on April 11, 2025. [Doc. No. 196 at 4]. The entirety of my order with regard to that claim consists of a single sentence: "Zhao's Cross-Motion for Summary Judgment on its counter-claim under Mass. Gen. Laws c. 235, § 23A, is **<u>DENIED WITHOUT PREJUDICE</u>**, with the Court to revisit this claim after trial." [*Id.*] (emphasis in original). On January 20, 2026, 11 days after the jury returned a verdict, Ms. Zhao filed a motion to renew her earlier summary judgment motion on her counterclaim. [Doc. No. 256 at 1–2] ("Defendant Zhao asks that the Court revisit its earlier ruling and determine whether it can now be decided without the need for another trial. The trial on

damages having been concluded, Ms. Zhao hereby renews her earlier motion for summary judgment on her Counterclaim.").

Lunan argues that Ms. Zhao's motion to renew mischaracterizes what should more appropriately be considered a motion for reconsideration of my earlier order denying Ms. Zhao's original motion for summary judgment on her counterclaim. [Doc. No. 257 at 2] ("Long Zhao's bid to 'renew' her motion for summary judgment is, stripped of pretense, a motion to reconsider the Court's *rejection* of that motion.") (emphasis in original). Lunan's argument seems to be based on my decision to use the word "claim" instead of "motion" in my earlier summary judgment order. *See* [*id.*] ("There is no cause to grant such a motion . . . when the Court held it would revisit Zhao's *claim* for recognition of BVI costs awards (not her summary judgment *motion*), after the recently concluded jury trial.") (emphasis in original). Lunan then argues that Ms. Zhao's "motion for reconsideration" fails on the merits because it "identifies no new facts, law, or injustice warranting reconsideration" and is procedurally improper because the motion does not comport with the Local Rules meet and confer requirements. [*Id.* at 3].

As an initial matter, I fail to see how my decision to use the term "claim" instead of "motion" in my prior summary judgment ruling is material. In her first motion for summary judgment, Ms. Zhao moved on multiple claims: Lunan's Computer Fraud and Abuse Act claim, Lunan's trade secret misappropriation claims, Lunan's tortious interference with contract claim, Lunan's unjust enrichment claim, and Ms. Zhao's counterclaim. [Doc. No. 169 at 2]. Having ruled on the merits of all but one of those claims (*i.e.*, Ms. Zhao's counterclaim) in my April 11, 2025 order, it makes little sense to suggest revisiting her motion in its entirety following the damages trial. *See generally* [Doc. No. 196]. Further, I made no findings regarding Ms. Zhao's motion for summary judgment on the counterclaim, and it was denied without prejudice (suggesting Ms. Zhao

could refile at an appropriate time) and accompanied by an instruction to revisit the claim after trial. *See* [*id.* at 4]. I therefore decline to adopt Lunan's characterization of Ms. Zhao's latest motion as one for reconsideration and, given that the motion complied with my earlier order to revisit it after trial, find that it was procedurally proper.[1]

### D.      Recognition is Not Discretionary

Lunan informs the Court that Ms. Zhao "is now seeking the exact same relief in parallel proceedings in [Beijing], China" and that "the Beijing court ordered Zhao's recognition claim [that is pending in the Beijing court] to be transferred to the Linyi court." [Doc. No. 257 at 5]. Additionally, Lunan alleges that Ms. Zhao "represented to the Beijing court that she was *not* seeking recognition of enforcement of the BVI cost awards elsewhere." [*Id.*] (emphasis in original). Lunan then encourages this Court to abstain from ruling on Ms. Zhao's counterclaim under judicial economy principles. *See* [*id.*] ("[A]ny relief Zhao obtains in the Linyi Court would render her counterclaim here superfluous and a waste of party and judicial resources. There is no good cause for this Court to rush headlong into this international conflict, merely for Zhao to secure for herself additional bites at the apple.").

Lunan cites no authority that would grant the Court discretionary freedom to rule on Ms. Zhao's counterclaim, and I do not believe such power exists.[2] *See generally* [*id.*]. The Act compels

---

[1] Lunan's argument concerning the adequacy of the parties' meet and confer is unpersuasive for multiple reasons. First, it is clear from the January 2026 email chain, [Doc. No. 256 at 4–5], that Lunan's counsel, not Ms. Zhao's counsel, refused to meet and confer. Second, the very purpose of the meet and confer requirement is to discuss the arguments a party intends to make and, where possible, resolve issues without court intervention. Ms. Zhao's counsel did just that. The fact that Lunan's counsel disagreed with the positions taken does not render the meet and confer "inadequate and her request procedurally improper." [Doc. No. 257 at 3].

[2] Although Ms. Zhao may not obtain double recovery, the parties have not informed this Court of a final judgment in the Linyi litigation. *See Goldhammer v. Dunkin' Donuts, Inc.*, 59 F. Supp. 2d 248, 251 (D. Mass. 1999) (citation omitted) (emphasis in original) ("[P]arallel proceedings on the same in personam claim should ordinarily be allowed to proceed simultaneously, at least until a judgment is reached in one which can be pled as res judicata in the other.").

recognition. *See* M.G.L. ch. 235, § 23A ("The foreign judgment *shall* be enforceable in the same manner as the judgment of a sister state which is entitled to full faith and credit.") (emphasis added).

## IV.  CONCLUSION

For the aforementioned reasons, Zhao's renewed motion for summary judgment on her Recognition Act claim, [Doc. No. 256], is <u>GRANTED</u>.


SO ORDERED.

<u>/s/ Myong J. Joun</u>
United States District Judge